UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJINDER S.,[1]<br><br>                Petitioner,<br><br>        v.<br><br>MINGA WOFFORD, et al.,<br><br>                Respondents. | No. 1:26-cv-02152-TLN-AC<br><br>A# 245-771-739<br><br><br>**ORDER** |

This matter is before the Court on Petitioner Baljinder S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").  (ECF No. 1.)  Respondents filed a response.  (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED.[2]

///

---

[1]     The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]     Petitioner filed a reply on the Petition over a month after the Court's deadline without a request for extension of time.  (ECF No. 8.)  Therefore, Petitioner' reply was untimely and the Court did not consider it in this ruling.

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention.  The facts in the record are not disputed.

On January 28, 2024, Petitioner entered the United States to seek asylum.  (ECF No. 1 at 2.)  Petitioner was initially detained by immigration authorities and then released into the United States.  (*See* ECF No. 1-1 at 4 (Notice to Appear).)

Since his release, Petitioner asserts he has fully complied with all immigration procedures.  (ECF No. 1 at 2.)  In July 2024, he applied for asylum, which is still pending.  (*Id.*)  Petitioner maintained contact with U.S. Immigration and Customs Enforcement ("ICE") and attended all noticed appointments.  (*Id.*)  The government granted Petitioner authorization to work.  (*Id.*; ECF No. 1-1 at 8.)  Additionally, Petitioner has no criminal history.  (*Id.*)

Over the last two years, Petitioner has established a life in California, including a stable residence, gainful employment, and participation in a faith community.  (*Id.* at 2–3.)

Nevertheless, on February 26, 2026, ICE detained Petitioner at his home without advance notice, a warrant, written explanation, or any opportunity to be heard as to his detention.  (*Id.* at 3.)  When Petitioner asked the reason for his arrest, officers told him that he missed an ICE check-in, but Petitioner had not received any letter, notice, or other communication from ICE directing him to report for an appointment.[3]  (*Id.* at 2–3.)

While in detention, Petitioner was not afforded an opportunity to be heard.  (*See id.* at 6.)  Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the lawfulness of his civil immigration detention (ECF No. 1), along with a motion for temporary restraining order ("TRO") (ECF No. 2).  On March 19, 2026, this Court issued a TRO requiring Petitioner's immediate release.  (ECF No. 4.)  The Court now considers the Petition on the merits.

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

---

[3]      Respondents do not assert in their opposition to the Petition that Petitioner was detained due to a missed ICE check-in.  (*See* ECF No. 6.)

(citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[4]  (ECF No. 1 at 17–18.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### i.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process

---

[4]   Petitioner claims Respondents violated both procedural and substantive due process; however, finding the requested relief warranted under procedural due process, the Court declines to address substantive due process for judicial economy.

Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here.  Petitioner has established a life in the United States since his release from immigration custody, including a home, work, and a faith community.  Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").  Indeed, the government granted Petitioner a work permit to support his liberty.

In opposition, Respondents argue Petitioner does not possess a right to freedom because his detention is mandated under 8 U.S.C. § 1225(b)(2).  (ECF No. 6 at 1.)  However, Respondents also recognize that the majority of judges in the Eastern District of California have rejected Respondents' position as to mandatory detention.  (*Id.*)  Indeed, the vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of 8 U.S.C. § 1225(b)(2) to persons like Petitioner who reside in the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo*

*Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Rather, Petitioner's detention is governed by the general process under 8 U.S.C. § 1226(a) and he is entitled to the process required by that provision including a warrant for arrest and a bond hearing, at minimum. Thus, Petitioner maintains a strong liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner was detained for nearly a month, after an arrest without notice or a warrant, and without any opportunity to be heard as to the justification of his detention. He was unable to work, was separated from his community, and restricted in the practice of his faith. (*See* ECF No. 1 at 4.) Accordingly, this factor weighs in favor of finding Petitioner's private interest was impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation was considerable given Petitioner did not receive any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal; his immigration proceedings are still pending. Respondents do not dispute that Petitioner has no criminal history. (*See* ECF No. 6.) Moreover, Respondents do not contend that Petitioner is a danger or a flight risk. Without any showing of a legitimate interest to detain Petitioner, the Court finds there was a serious likelihood Petitioner was erroneously deprived of his liberty interest. Without any procedural safeguards, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents. (Indeed, they are the very processes owed to Petitioner under 8 U.S.C. § 1226(a).) Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the

6

Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See generally* ECF No. 6.)

Yet, Petitioner was not provided any notice or warrant, nor was he given a pre-deprivation hearing.  Nor did Respondents provide a post-deprivation hearing during his detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**[5]

Respondents detained Petitioner in violation of the U.S. Constitution.  Accordingly, the Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[6]  IT IS FURTHER ORDRED:

1.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690;

---

[5]   Respondents request the Court hold this case in abeyance until the Ninth Circuit rules on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025), which may have precedential effect on one issue in case.  (ECF No. 6 at 2.)  The Court declines to hold this case in abeyance.  As this Court has said previously, it will not delay issuing relief on the prospective chance a pending appeal could change the outcome of one claim.

[6]   Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 19.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

*Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

2. Petitioner's motion for temporary restraining order seeking clarification of TRO (ECF No. 7) is denied as moot.

3. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE